# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIS HARPER,<br><br>            Plaintiff,<br><br>            v.<br><br>MARCORP, LTD., et al.,<br><br>            Defendants. | Civil Action No. 20-cv-980 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

On November 30, 2022, after a three-day jury trial, a jury rendered a unanimous verdict in this case, finding that defendants had failed to re-employ U.S. Army Reservist Willis Harper when he returned from uniformed service, violating the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4312. *See* Verdict Form, ECF No. 54. Accordingly, the jury awarded plaintiff $151,762 in compensatory damages, and further found that defendants acted "willfully" in violation of USERRA, entitling plaintiff to liquidated damages in an amount equal to compensatory damages pursuant to 38 U.S.C. § 4323(d)(1)(C). *Id.* at 2. On December 28, 2022, defendants filed a timely motion to alter or amend judgment, or in the alternative, for a partial new trial on the issue of damages, arguing that the jury's award exceeded the evidence produced at trial by plaintiff and would cause defendants to suffer a "manifest injustice." Defs.' Mot. to Alter or Amend J. or Mot. for Partial New Trial on Damages ("Defs.' Mot.") at 1–2, ECF No. 58. For the reasons stated below, the defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

1

I.      BACKGROUND

The scope of damages permitted by USERRA, factual background, and procedural history relevant to the pending motion are described below.

   A.      Damages under USERRA

USERRA provides that an employer who violates the statute may be required to "compensate the [plaintiff] for any loss of wages or benefits suffered by reason of such employer's failure to comply" with USERRA.  38 U.S.C. § 4323(d)(1)(B).  Courts offset the salary that the servicemember would have received if not for his or her employer's USERRA violation with other earned income.  *See Harwood v. Am. Airlines, Inc.*, 963 F.3d 408, 419 (4th Cir. 2020) (affirming the lower court's offset of the serviceman's backpay against income received from the Air Force that "he would not have been able to complete or that would have required leave from [the employer] but for the USERRA violation"); *Serricchio v. Wachovia Secs., LLC*, 606 F. Supp. 2d 256, 261 (D. Conn. 2009) ("A back-pay award to compensate [plaintiff] for his lost earnings must reflect an offset for income he earned during the back-pay period.") *aff'd on other grounds*, 658 F.3d 169 (2d Cir. 2011).  In fashioning relief designed to make plaintiffs who prevailed under USERRA whole, courts have also used their equitable powers to award prejudgment interest and to account for future lost wages through front-pay damages.  *Serricchio*, 606 F. Supp. 2d at 267 ("Given that the purpose of back pay is to make the plaintiff whole, it can only be achieved if interest is compounded." (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993))); *Carpenter v. Tyler Indep. Sch. Dist.*, 226 F. App'x 400, 401 (5th Cir. 2007) (per curiam) (affirming award of front-pay damages arising from employer's violation of USERRA); *see also Neal v. Dir., D.C. Dep't of Corr.*, Case No. 93-cv-2420, 1995 WL 870887, *1–2 (D.D.C. Dec. 20, 1995) (Lamberth, J.) (awarding prejudgment interest on compensatory damages awarded under Title VII and the Civil Rights Act, noting that

2

"[p]rejudgment interest . . . is an element of complete compensation" (quoting *Loeffler v. Frank*, 486 U.S. 549, 558 (1988))).

Further, "if the court determines that the employer's failure to comply with the provisions of [USERRA] was willful," the employer may be required to pay an amount equal to the compensatory damages in liquidated damages. 38 U.S.C. § 4323(d)(1)(C). Effectively, "[t]he liquidated damages provision awards plaintiffs double the actual damages suffered [in lost wages or benefits]." *Koehler v. PepsiAmericas, Inc.*, 268 F. App'x 396, 402 (6th Cir. 2008).

### B. Factual Background

At trial, both parties presented evidence as to the magnitude of plaintiff's potential damages, which comprise "any loss of wages or benefits suffered by reason of" defendants' violation of USERRA. 38 U.S.C. § 4323(d)(1)(B). Plaintiff testified that his annual salary during his employment with defendants was $80,000, *see* Defs.' Mot., Ex. 5, Excerpted Trial Transcript (11/30/2022) at 8:1–7, ECF No. 58-6, and he testified extensively about the income he received from other employment after he was terminated by defendants, *see* Defs.' Mot., Ex. 4, Excerpted Trial Transcript (11/28/2022) at 61:3–65:2, ECF No. 58-5; Excerpted Trial Transcript (11/30/2022) at 7:5–12:10. After defendants failed to re-employ him, plaintiff initially struggled to find full-time work due in part to his adherence to a non-compete agreement that he had entered with defendants, and in part because he expected to be deployed to Afghanistan as part of his military service. *See* Excerpted Trial Transcript (11/28/2022) at 61:3–25. During this time, Harper performed "trade work" for a Philadelphia funeral home, *id.*, and received orders from the U.S. Army to be on stand-by to support the U.S. government's response to the then-emerging COVID-19 pandemic. He then deployed to Afghanistan from July 23, 2020 until April 4, 2021. *Id.* at 62:1–9. He was paid approximately $96,000 during his deployment, and the trade work he performed in 2020 earned approximately $12,000. Excerpted Trial Transcript

3

(11/30/2022) at 8:8–16. Harper testified that, from June 2021 until January 2022, he worked for an undefined part of "the government" in Rockville, Maryland, earning a $60,000 annual salary. Excerpted Trial Transcript (11/28/2022) at 62:19–63:8. He resumed freelance work with the Philadelphia funeral home until June 2022, *id.* at 63:9–13, when he stopped working briefly due to surgery on his wrist. During that period, Harper earned somewhere between $31,000 and $37,000 for his trade work. Excerpted Trial Transcript (11/30/2022) at 8:25–9:6; Defs.' Mot., Ex. 3, Pl.'s Tr. Ex. T (Pl.'s Ex. T), ECF No. 58-4. Finally, Harper obtained employment at Arlington National Cemetery on November 7, 2022, earning an annual salary of $70,000. Excerpted Trial Transcript (11/28/2022) at 63:14–25. This timeline of Harper's employment was partially reiterated by the defendants, who read Harper's May 2021 deposition testimony regarding his post-termination employment into the record through Victor March, Jr., an employee of defendants. *See* Rough Transcript of Trial (11/29/2022) ("Trial Tr. (11/29/2022) (Rough)") at 158:19–165:14.

At trial, plaintiff entered into evidence Exhibit T, which summarized the damages he sought through two charts. The first chart showed the following:

| Unmitigated Backpay | $ 219,934.00 | ($80,000 salary from 3/2/20-11/28/22) |
|---|---|---|
| Mitigation | $ 144,053.00 | (Batchelor Brothers (2020), Army Deployment, Rockville Job, Batchelor Brothers (2022), Arlington National Cemetery) |
| Mitigated Backpay | $ 75,881.00 | |
| Willfulness | $ 75,881.00 | |
| Total | $ 151,762.00 | |

Pl.'s Ex. T. The second chart substantiated the plaintiff's claim of $144,053 in "Mitigation," adding up the total income plaintiff earned through other employment since his termination, largely in accordance with plaintiff's testimony. *Id.*

Plaintiff confirmed at trial that Exhibit T illustrated his damages claim. After the Court granted the admittance of the exhibit, plaintiff's counsel asked plaintiff, "And so then your mitigated backpay today is $75,881; is that correct?" Excerpted Trial Transcript (11/30/2022) at 11:15–21. Plaintiff confirmed this amount. He elaborated that, with liquidated damages, he sought "two times the amount of the mitigated damages if awarded," and confirmed that this total amount, which was listed on the chart as $151,762, was "what [he was] seeking in this case." *Id.* at 12:1–10. Plaintiff's counsel re-affirmed that Exhibit T comprised plaintiff's evidence of his damages during closing arguments, when she described the exhibit as "a very simple outline of the damages," showing that, "in total, [plaintiff] is seeking $151,762 today if there is a judgment in his favor." *Id.* at 31:17–32:6.

### C. Procedural Background

The jury rendered its verdict after a three-day trial on November 30, 2022, finding for plaintiff on Count One that defendants had failed to re-employ plaintiff when he returned from uniformed service, in violation of USERRA, 38 U.S.C. § 4312. Jury Verdict, ECF No. 54. In response to the verdict form's question asking "[w]hat sum of money, if any, do you find would reasonably compensate Willis Harper for his net loss of wages and benefits because of Marshall-March Funeral Homes' conduct," the jury wrote $151,762. *Id.* Finally, in response to the last question on the verdict form, the jury found that defendants had acted willfully in violating USERRA. *Id.* No objections were made by counsel at the time that the verdict was rendered. *See* Excerpted Trial Transcript (11/30/2022) at 68:11–69:10. That same day, the Court docketed the judgment, awarding plaintiff "the sum of $151,762.00 in compensatory damages and the sum of $151,762.00 in liquidated damages, together with costs." Judgment on the Verdict, ECF No. 56. On December 28, 2022, however, defendants filed the instant motion seeking to alter or

5

amend judgment, or alternatively, for a partial new trial on the issue of damages. Plaintiff opposed the motion, and it is now ripe for the Court's review.

## II.   LEGAL STANDARD

Rule 59(e) of the Federal Rules of Civil Procedure authorizes motions "to alter or amend a judgment," FED. R. CIV. P. 59(e), which "'suspends the finality of the original judgment' for purposes of an appeal." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020) (quoting *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, n.10 (1984)). Consistent with that corrective function, the only matters subject to reconsideration are those "properly encompassed in a decision on the merits," *id.*, such that "courts will not address new arguments or evidence that the moving party could have raised before the decision issued," *id.* Thus, the law is well-settled that motions pursuant to Rule 59(e) are "discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Pigford v. Perdue*, 950 F.3d 886, 891 (D.C. Cir. 2020) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004)); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." (internal quotation marks omitted)). With these limits, "[r]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Mohammadi v. Islamic Republic of Iran*, 782 F.3d 9, 17 (D.C. Cir. 2015) (internal quotation marks omitted).

## III.   DISCUSSION

In contending that the jury's award to plaintiff should be altered, defendants raise three overlapping arguments. First, defendants contend that the verdict for $151,762 in compensatory

damages "substantially exceeds the evidence of net los[t] wages produced by Plaintiff at trial," Defs.' Mem. in Supp. of Mot. Alter or Amend J. or Mot. for Partial New Trial on Damages ("Defs.' Mem.") at 9, ECF No. 58-1.  Second, defendants argue that because the award of $151,762 exceeds plaintiff's "loss of wages or benefits," 38 U.S.C. § 4323(d)(1)(B), it "is in violation of the law of USERRA."  *Id*.  Third, defendants argue that the jury was confused, misunderstood the Court's instructions, or "failed to follow" the Court's instructions.  *Id.* at 9–10.  These arguments reduce down to the same, valid point: that the jury, intending to award plaintiff both compensatory and liquidated damages under USERRA, clearly wrote on the verdict form the total damages they intended to award plaintiff, rather than merely the amount of compensatory damages in response to the question.

Plaintiff's attempts to defend his windfall of double the amount of damages he argued for and proved at trial are unavailing.  First, plaintiff contends that USERRA's provision of damages equivalent to plaintiff's "loss of wages or benefits" encompasses "front pay, a monthly draw, and compounded prejudgment interest," in addition to back pay.  Pl.'s Opp'n at 4, ECF No. 61.  Plaintiff is correct that courts have made plaintiffs whole with these forms of damages in other USERRA cases, *see infra* § I.A—but these elements of compensatory damages were never submitted to the jury.  This Court will not presume that the jury reached these issues when the parties never raised them with the jury, the verdict form did not mention them, and this Court never provided the jury with instructions as to how to include these forms of relief in the damages calculation.  *See Neal*, 1995 WL 870887, at *3 (declining to find that the jury considered prejudgment interest in similar circumstances).[1]

---

[1] Plaintiff's argument that the jury's award may have included front-pay damages further conflicts with the fact, stated in one of its cited cases, that "front pay . . . is a form of equitable rather than legal relief and should be determined by the court rather than the jury."  *Carpenter v. Tyler Indep. Sch. Dist.*, 429 F. Supp. 2d 848, 852 (E.D.

Second, plaintiff points out two pieces of evidence in the record that could have resulted in the jury finding a higher damages award than what plaintiff sought. Plaintiff notes that his salary at Arlington National Cemetery is $10,000 lower than the salary he earned while employed by defendants. Pl.'s Opp'n at 5 (citing Excerpted Trial Transcript (11/28/2022) at 63). He also argues that he earned additional money, above his base salary of $80,000, through unspecified "extra duties" while employed by defendants. Pl.'s Opp'n at 5; Excerpted Trial Transcript (11/30/2022) at 8:1–7. What plaintiff fails to argue is how these two details—unaccounted for in plaintiff's own damages exhibit—add up to exactly double the amount in compensatory damages that plaintiff requested from the jury.

Finally, plaintiff argues that the jury was not confused, because all members of the jury agreed with the verdict when polled, and further, they were instructed not to consider closing arguments as evidence. Pl.'s Opp'n at 6–7. Plaintiff contends that, even if his counsel's closing argument confused the jury as to the amount of compensatory versus total damages he sought, "[p]laintiff's closing argument is not a valid reason to overturn the jury's verdict." *Id.* at 6.[2] The jury's error is clear without considering plaintiff's closing argument, however. The jury derived its sum of compensatory damages—$151,762—from plaintiff's Exhibit T's sum total of compensatory and liquidated damages, and in doubling this figure to arrive at the total sum including liquidated damages, the Court arrived at an amount double what the record at trial supported. Thus, the "need to correct a clear error or prevent manifest injustice" is obvious, meriting an alteration of the judgment pursuant to FED. R. CIV. P. 59(e), *Pigford*, 950 F.3d at

---

Tex. 2006), *aff'd,* 226 F. App'x 400 (5th Cir. 2007) (per curiam). Nor is it appropriate in this case, where plaintiff has not provided any arguments—even to the Court—in support of this type of relief.

[2]    Plaintiff also argues that no manifest injustice exists, because defendants "had every opportunity during trial to clarify their position on damages." Pl.'s Opp'n at 7. Defendants merely request that plaintiff's damages be reduced to match the very figure that plaintiff advanced at trial, and as a result, their motion does not attempt to "relitigate issues that already were dealt with during trial." *Id.*

891, and the Court need not consider defendants' alternatively sought relief of a new trial on the issue of damages.

## IV.     ORDER

Accordingly, upon consideration of defendants' Motion to Alter or Amend Judgment or, in the Alternative, for a Partial New Trial on Damages, ECF No. 58; the plaintiff's opposition; the defendants' reply; and the underlying record, it is hereby:

**ORDERED** that defendants' Motion to Alter or Amend Judgment or, in the Alternative, for a Partial New Trial on Damages, ECF No. 58, is **GRANTED** to the extent that it requests alteration of the judgment in this case, and **DENIED** as to its request for alternative relief;

**ORDERED** that the Judgment on the Verdict be amended to a sum of $75,881 in compensatory damages and a sum of $75,881 in liquidated damages, together with costs; and it is further

**ORDERED** that plaintiff file, by February 10, 2023, any supplemental briefing detailing its requested sum in prejudgment interest on the award, and by February 15, 2023, defendants file any response, unless the parties submit, by February 10, 2023, a joint status report indicating an agreement has been reach on that issue.

**SO ORDERED.**

Date:  February 3, 2023

_____
BERYL A. HOWELL
Chief Judge